UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
MITSUI SUMITOMO INSURANCE USA,
INC.,

                    Plaintiff,

          - against –

BULLDOG DIVING, INC. and
LOUISVILLE GAS & ELECTRIC
COMPANY,

                    Defendants.

------------------------------X

**MEMORANDUM AND ORDER**

25 Civ. 2504 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

     Plaintiff Mitsui Sumitomo Insurance, USA, Inc. ("Mitsui" or "plaintiff") brings this action against defendants Bulldog Diving, Inc. ("Bulldog") and Louisville Gas & Electric Company ("LG&E," and together with Bulldog, "defendants"), seeking a declaratory judgment in admiralty.

     Presently before the Court are defendants' twin motions to dismiss plaintiff's Amended Complaint ("AC") for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, or in the alternative, to transfer venue to the United States District Court for the Western District of Kentucky pursuant to 28 U.S.C. § 1404(a).  Specifically, defendants contend that: (i) plaintiff has failed to plead, and cannot establish, the

requisite contacts between either Bulldog or LG&E and New York to support a finding of personal jurisdiction; and (ii) convenience and the interests of justice support transfer to the Western District of Kentucky.

Defendants' motions arise in the following context. Currently pending in the Western District of Kentucky is a lawsuit commenced by LG&E against Bulldog and Mitsui alleging that: (i) pursuant to a contract between LG&E and Bulldog, Bulldog is obligated to indemnify LG&E for costs and expenses incurred in connection with legal proceedings arising from a 2021 commercial diving accident; (ii) Bulldog breached its contractual obligations by failing to name LG&E as an Additional Insured on a Marine Commercial Liability insurance policy issued by Mitsui ("Policy"); and (iii) Mitsui wrongfully denied coverage to LG&E under the Policy.  In that action, Bulldog contends, <u>inter alia</u>, that it has no indemnification obligation because the relevant contractual provisions do not apply and, in any event, are unenforceable.

In parallel, Mitsui seeks from this Court a declaratory judgment that: (i) it has no duty to indemnify and defend Bulldog in the Kentucky proceeding; (ii) the Policy does not provide coverage for claims asserted in Kentucky; and (iii) LG&E does not qualify as an Additional Insured under the Policy.  Mitsui's

-2-

request for declaratory relief rests on its position that Bulldog did not, through its contract with LG&E, assume LG&E's tort liability for bodily injury to a third party. Mitsui also acknowledges that the instant action could have been brought in the Western District of Kentucky. Resolution of Mitsui's claims would therefore require this Court to interpret the same underlying contractual indemnification provisions at issue in the Western District of Kentucky and determine the scope of the indemnification obligations between Bulldog and LG&E.

For the reasons stated herein, defendants' motions to transfer are granted, and defendants' motions to dismiss for lack of personal jurisdiction are denied without prejudice.[1]

## I.   Factual Background[2]

### a. The Parties

Mitsui is a New York insurance company with its principal place of business in New York, New York. AC ¶ 1. Bulldog is an

---

[1]    In its opposition papers filed on September 22, 2025, Mitsui sought oral argument on defendants' motions. ECF Nos. 31, 36. However, because defendants' motions present straightforward, well-settled legal issues governing transfer of venue that can be resolved on the existing record, the Court has concluded that oral argument is unnecessary. See Mir v. Shah, 2012 WL 6097770, at *4 (S.D.N.Y. Dec. 4, 2012); see also Katz v. Morgenthau, 892 F.2d 20, 22 (2d Cir. 1989).

[2]    The Court's account of Mitsui's factual allegations is drawn from Mitsui's Amended Complaint ("AC"), ECF No. 17. The Court also considers Mitsui's briefs in opposition to the motions to dismiss ("Mitsui Bulldog Opp." and "Mitsui LG&E Opp."), ECF Nos. 31, 36, and the Declarations of Junea Broomes Small ("Small

Indiana diving company with its principal place of business in Rockport, Indiana, approximately 95 miles from Louisville, Kentucky. Id. ¶ 3; LG&E Mem. at 3. Bulldog employs approximately 16 divers and performs commercial diving activities on inland waterways and land-based structures adjacent to inland waterways. Williams Decl. ¶ 3. Bram Williams is the President of Bulldog and resides in Owensboro, Kentucky. Id. ¶¶ 1-2. Most of Bulldog's work is performed in Kentucky, Indiana, and Illinois. Id. ¶ 3. LG&E is a utility company incorporated in Kentucky with its principal place of business in Louisville, Kentucky. AC ¶ 4. LG&E serves natural gas and electric customers in Louisville and surrounding counties. LG&E Mem. at 3.

---

Decl."), ECF Nos. 32, 37, Jacqueline Nolan ("Nolan Decl."), ECF Nos. 33, 38, and Patricia Walsh ("Walsh Decl."), ECF Nos. 34, 39, filed in support of those briefs. On a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), the Court may consider all pleadings and accompanying declarations, while "resolving all doubts in [plaintiff's] favor." DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001). On a motion to transfer venue, the Court may consider factual submissions (including declarations) by defendants. See, e.g., Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978). Accordingly, the Court considers Bulldog's brief in support of its motion to dismiss or, in the alternative, to transfer venue ("Bulldog Mem."), ECF No. 25, LG&E's brief in support of its motion to dismiss or, in the alternative, to transfer venue ("LG&E Mem."), ECF No. 28, and the declarations of Bram Williams ("Williams Decl."), ECF No. 25-1, Cole Tischer ("Tischer Decl."), ECF No. 25-2, Jordan S. Blask ("Blask Decl."), ECF No. 28-1, and Douglas Gossow ("Gossow Decl."), ECF No. 41-1.

-4-

### b. Relevant Agreements Between Bulldog and LG&E

On June 7, 2016, Bulldog and LG&E entered into a General Commercial Agreement.  ECF No. 17-4 ("GCA").  The GCA was intended to "set forth certain default terms and conditions for all Contracts" between Bulldog and LG&E.  GCA at 1.  As relevant here, the GCA required Bulldog to, "at its own expense, maintain and carry in full force and effect insurance reasonably acceptable" to LG&E.  Id. § G4.1.  That provision also required Bulldog to name LG&E as an "additional insured."  Id. § G4.2.  Further, the GCA contained an indemnification provision stating that Bulldog:

> [S]hall indemnify, defend, and hold harmless [LG&E] from all Claims and Liabilities, whether suffered directly by [LG&E] or indirectly by reason of third party Claims, to the extent arising from, or occasioned by or in connection with: (a) bodily or other personal injuries (including death) to Persons . . . resulting or alleged to have resulted from acts or omissions of any [Bulldog] Party or otherwise from [Bulldog's] performance under this Contract . . . (d) Claims by any Governmental Authority arising from or in any matter relating to [Bulldog] Parties' failure to comply with or remediate pursuant to any Applicable Law[.]

Id. § 15.  The GCA is governed by Kentucky law.  Id. § G9.8.  In 2021, LG&E hired Bulldog to perform dive work and inspect certain pump bays at the Mill Creek Generating Station ("Mill Creek"), a coal-fired power plant owned by LG&E and located on the banks of the Ohio River near southwest Louisville.  AC ¶ 18.  That agreement

-5-

was memorialized in a Purchase Order which applied "specifically to the Mill Creek work and incorporate[d] the terms of the GCA." LG&E Mem. at 4 n.4.

### c. Accident and Aftermath

On July 15, 2021, Bulldog began performing work at Mill Creek. AC ¶ 18.  During the diving operation, a young member of Bulldog's dive team, Jaxxyn Wood, was tragically killed.  Id.  In early 2022, the Kentucky Labor Cabinet Office of Occupational Safety and Health ("KOSHA") cited Bulldog for several workplace safety violations and initiated a proceeding against LG&E for violations relating to the accident ("KOSHA Proceeding").  Id. ¶ 19; LG&E Mem at 5.  As of the date of this writing, the KOSHA Proceeding against LG&E remains pending.  AC ¶ 27.  Shortly after, Jaxxyn Wood's estate filed a negligence and wrongful death suit against LG&E for damages arising from the accident ("Wood Lawsuit").  Id. ¶ 21.  LG&E settled all claims in the Wood Lawsuit.  Id. ¶ 26.

### d. The Policy

In April 2021, a few months prior to the July accident, Bulldog procured a Marine Commercial Liability insurance policy from Mitsui.  Id. ¶ 12; ECF No. 17-1.  Bulldog obtained the Policy through Houchens Insurance Group ("Houchens"), an Owensboro, Kentucky-based insurance agency.  Tischer Decl. ¶¶ 3-4.  Houchens

worked with a Massachusetts-based marine insurance broker, International Special Risks, Inc. ("ISR"), to place the requisite coverage.  Id. ¶¶ 5-6.  As part of that process, Bulldog signed an Agent of Record letter confirming ISR as Managing General Agent and authorizing ISR and/or Houchens to procure the policy from Mitsui.  Gassow Decl., Ex. A.  Houchens provided the Agent of Record letter to ISR and directed ISR to "move forward in acting on behalf of the insured and Houchens to obtain the renewal quotes."[3]  Id.  The Policy provides marine liability coverage to Bulldog and was negotiated, underwritten, bound, and executed in Mitsui's New York office.  AC ¶¶ 12-13.

The Policy contains several exclusions.  Specifically, the Policy contains: (i) an exclusion for "'[b]odily injury' to . . . [a]n 'employee' of [Bulldog] arising out of and in the course of . . .  [e]mployment by [Bulldog]"; (ii) a "diver limitation" excluding "'[b]odily injury' to . . . [a]ny underwater diver" employed or subcontracted by Bulldog; and (iii) an exclusion for fines, penalties, and punitive damages.  Id. ¶¶ 43, 50, 57-58.  However, these exclusions and limitations do not apply to "insured contracts."  For example, the Policy's "diver limitation":

---

[3]    The parties dispute whether Bulldog or ISR forwarded the Agent of Record letter to Mitsui.  However, that factual dispute is immaterial to the resolution of the motions presently before the Court.

> [S]hall <u>not apply to liability assumed by the insured under an 'insured contract'</u> with respect to 'bodily injury' to a diver employed by the insured provided that the diving operations are performed at a vertical depth of not exceeding 90 feet below the surface of the water.

Policy at MUS GEN 0020 (emphasis added).  Similarly, the "bodily injury" exclusion "does not apply to liability assumed by the insured under an 'insured contract.'"  Policy at MUS MCL 0015 2.e. In relevant part, the Policy's definition of "Insured Contract" reads as follows:

> That part of <u>any other contract</u> or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which <u>you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization</u>.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

<u>Id.</u> at MUS MCL 0016 9.f (emphasis added).  Accordingly, if, as LG&E asserts, the GCA requires Bulldog to "assume the tort liability" of LG&E, the GCA qualifies as an "insured contract," and several of the Policy's exclusions and limitations do not apply.

The "insured contract" issue permeates other endorsements contained in the Policy as well.  For example, the Policy provides additional insured status to a person or organization to the extent they are "obligated by an 'insured contract' to include them as

-8-

Additional Assureds, but only with respect to" Bulldog's work. Id. at MUS MCL 0110.   Similarly, the Policy states that Mitsui shall pay amounts that Bulldog is liable to pay "on account of investigation, defense and indemnity obligations assumed under an 'insured contract' and arising from 'bodily injury' to any of your employees (excluding captain and/or crew of owned or operated watercraft and/or divers whilst engaged in diving operations)." Id. at MUS MCL 0150.

### e. Insurance Disputes and Ensuing Kentucky Litigation[4]

In 2024, LG&E demanded indemnification for, and defense of, the Wood Lawsuit and KOSHA Proceeding from Bulldog.  AC ¶ 23. Bulldog rejected that demand and argued that the claims in the Wood Lawsuit and KOSHA Proceeding did not fall within the scope of Bulldog's contractual defense and indemnity obligations owed under the GCA.  Id. ¶ 24.  On December 4, 2024, Mitsui sent a letter to LG&E stating that LG&E was not covered under the Policy.  ECF No. 17-2.  Mitsui argued that (i) the GCA between LG&E and Bulldog did not constitute an "insured contract," and, consequently, (ii) LG&E did not and could not qualify as an additional insured.  Id. at 3-

---

[4]    To avoid any doubt, this Court is only restating the legal issues between the parties.  In no way do we intend to comment on the merits of the positions of any party.

4.     Mitsui offered the following interpretation of the GCA's indemnity language:

> LG&E does not qualify as an additional insured nor are they entitled to contractual defense and indemnity under the Policy's MCL CGL coverage part because the GCA indemnity terms do not bring the contract within the Policy's definition of 'insured contract' because it does not require Bulldog to 'assume the tort liability of another party to pay for 'bodily injury' . . . to a third person or organization.  Accordingly, because Bulldog does not assume LG&E's liability in the indemnity clause, LG&E does not qualify as an additional insured under the Policy.

Id. at 3-4.

On January 29, 2025, LG&E filed suit against Bulldog in the Jefferson Circuit Court of the Commonwealth of Kentucky, seeking to recover costs and expenses to defend and settle the Wood Lawsuit and for defense and indemnity relating to the KOSHA Proceeding. AC ¶ 28.  That case was removed on February 24, 2025, and is pending before Judge Rebecca Grady Jennings and Magistrate Judge Colin H. Lindsay in the United States District Court for the Western District of Kentucky (the "W.D. Ky. Action").  Louisville Gas & Elec. Co. v. Bulldog Diving, Inc., et al., No. 3:25-cv-105-RGJ-CHL (W.D. Ky. filed Jan. 29, 2025).  The claims asserted by LG&E in the W.D. Ky. Action are threefold: (i) that Bulldog is contractually obligated, pursuant to the GCA and Purchase Order,

to indemnify LG&E for costs and expenses associated with the Wood Lawsuit and KOSHA Proceeding; (ii) that Bulldog breached the GCA and Purchase Order by failing to name LG&E as an Additional Insured; and (iii) that Mitsui wrongfully denied coverage to LG&E under the Policy.  Blask Decl., Ex. A-3.

On March 26, 2025, Bulldog filed a motion to dismiss and, on the same day, submitted a claim to Mitsui for defense and indemnity under the Policy arising out of the W.D. Ky. Action.  AC ¶ 30; Blask Decl., Ex. A-2.  On June 10, 2025, LG&E filed an Amended Complaint adding Mitsui as a defendant.  Blask Decl., Ex. A-3. Bulldog moved to dismiss the Amended Complaint on June 23, 2025, arguing that the terms of the GCA do not impose an indemnification obligation on Bulldog, and even if they did, those terms would be unenforceable.  Blask Decl., Ex. A-4.  That motion was fully briefed on July 22, 2025, and remains pending.  Blask Decl., Exs. A-5, A-6.

Mitsui filed an Answer on September 2, 2025.  Louisville Gas & Elec. Co., No. 3:25-cv-105-RGJ-CHL (W.D. Ky. filed Jan. 29, 2025), ECF No. 26.  On October 1, 2025, Mitsui moved to stay the W.D. Ky. Action pending resolution of the instant action.  Id. at ECF No. 31.  Mitsui argues that a stay is warranted to avoid "duplicative motion practice, unnecessary legal expense, and the

burdening of a second court with issues that already are being considered in another court, potentially resulting in inconsistent rulings." Id. at 2. Mitsui's motion to stay the W.D. Ky. Action was fully briefed on November 12, 2025, and remains pending. Louisville Gas & Elec. Co., No. 3:25-cv-105-RGJ-CHL (W.D. Ky. filed Jan. 29, 2025), ECF Nos. 33, 34, 36.

### f. Mitsui's Allegations in the New York Litigation

Here, Mitsui seeks a declaratory judgment that: (i) the Policy does not provide coverage for any and all claims against Bulldog in the W.D. Ky. Action; (ii) Mitsui does not have a duty to defend and indemnify Bulldog in the W.D. Ky. Action; (iii) LG&E does not qualify as an Additional Insured under the Policy and, accordingly, the Policy does not provide any coverage to LG&E for the claims alleged in the Wood Lawsuit and KOSHA Proceeding. AC ¶¶ 48, 55, 63, 70. Mitsui's foundation for requesting such declaratory relief is its position that the GCA is not an "insured contract": "The General Commercial Agreement is not an 'insured contract' as the term is defined by the Policy because the General Commercial Agreement does not obligate Bulldog to assume the tort liability of LG&E for bodily injury to a third party." See AC ¶¶ 38, 46, 53, 68.

-12-

## II.  Procedural Background

Mitsui filed its original complaint on March 26, 2025.  ECF No. 1.  On June 3, 2025, Bulldog and LG&E requested pre-motion conferences for proposed motions to dismiss Mitsui's complaint for lack of personal jurisdiction or, in the alternative, to transfer the action to the Western District of Kentucky.  ECF Nos. 11, 12. Mitsui opposed defendants' requests on June 6, 2025.  ECF No. 14. On July 9, 2025, the Court held a teleconference with the parties, permitting defendants to bring their motions and granting Mitsui leave to file an amended complaint.

Mitsui filed its Amended Complaint on July 28, 2025.  ECF No. 17.  On August 25, 2025, Bulldog and LG&E filed motions to dismiss or, in the alternative, to transfer to the Western District of Kentucky, along with accompanying memoranda of law and declarations in support thereof.  ECF Nos. 24-29.  Mitsui opposed the motions on September 22, 2025.  ECF Nos. 30-39.  Bulldog and LG&E filed reply memoranda in support of their respective motions on September 30, 2025.  ECF Nos. 40, 41.

### DISCUSSION

Defendants move to dismiss Mitsui's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2). Alternatively, defendants move to transfer venue to the Western

District of Kentucky pursuant to 28 U.S.C. § 1404(a).  For the reasons set forth below, the Court first addresses and grants defendants' motions to transfer venue.

## I.    Preliminary Considerations

A court need not resolve the issue of personal jurisdiction before deciding whether to transfer an action pursuant to § 1404(a).  See Fort Knox Music Inc. v. Baptiste, 257 F.3d 108, 111-12 (2d Cir. 2001).  Because "neither personal jurisdiction nor venue is fundamentally preliminary in the sense that subject-matter jurisdiction is," courts may address venue applications as a threshold matter "when there is a sound prudential justification for doing so[.]"  Leroy v. Great W. United Corp., 443 U.S. 173, 180 (1979).  Further, resolving a motion to transfer venue does not require a preliminary finding that the "transferring court has personal jurisdiction over the defendants."  Goldlawr, Inc. v. Heiman, 369 U.S. 463, 465 (1962); see also Volk Corp. v. Art-Pak Clip Art Serv., 432 F. Supp. 1179, 1181 (S.D.N.Y. 1977) (explaining a court "has power to transfer the case even if there is no personal jurisdiction over the defendants, and whether or not venue is

proper in [the] district, if a transfer would be in the interest of justice.").

Resolving a change of venue motion first is particularly appropriate where the question of personal jurisdiction over a defendant is close or likely to beget further litigation. See Cavit Cantina Viticoltori Consorzio Cantine Sociali Del Trentino Societa' Cooperativa v. Browman Family Vineyards, Inc., 656 F. Supp. 2d 421, 424 (S.D.N.Y. 2009) (deciding venue before reaching personal jurisdiction where a "substantial and genuine debate" existed over the latter). Courts in this Circuit have applied that very principle in ordering transfer under § 1404(a) without reaching contested personal jurisdiction questions. See e.g., Everlast World's Boxing Headquarters Corp. v. Ringside, Inc., 928 F. Supp. 2d 735, 741-42 (S.D.N.Y. 2013) (explaining that it was "prudent for the Court to address the motion to transfer venue first" where it was "doubtful that personal jurisdiction exist[ed] over [defendants] in the Southern District of New York, but clear that personal jurisdiction would exist over them in the [transferee district]"); Bristol-Myers Squibb Co. v. Andrx Pharms., LLC, 2003 WL 22888804, at *6 (S.D.N.Y. Dec. 5, 2003) (same).

At a minimum, it is doubtful that this Court has personal jurisdiction over Bulldog or LG&E. Bulldog is an Indiana-based

-15-

commercial diving company that is incorporated in Indiana and performs most of its work in Kentucky, Indiana, and Illinois. Williams Decl. ¶¶ 1-3.  Bulldog is not registered to do business in New York, does not have offices, employees, bank accounts, or other property in New York, and has never performed work in New York.  Id. ¶¶ 4-5.  Likewise, LG&E is a Kentucky-based utility company that has no offices, employees, customers, property, bank accounts, or operations in New York.  LG&E Mem. at 9.

Mitsui relies on New York's long-arm jurisdictional statute, C.P.L.R. § 302(a)(1), to argue that defendants transacted business by engaging in "purposeful activity" that "purposefully avail[ed]" defendants of the privilege of conducting activities within New York.  Mitsui Bulldog Opp. at 6-12; Mitsui LG&E Opp. at 7-16. Mitsui argues that personal jurisdiction exists over defendants by virtue of ISR and/or Houchens procuring the Policy, governed by New York law, from Mitsui, a New York-based insurance company. Id.  Whatever its abstract viability, Mitsui's argument is a particularly weak foundation on which to base personal jurisdiction, where defendants' connections to New York are attenuated and, in significant respects, purely coincidental. Neither Bulldog nor LG&E have business operations in New York. Rather, the alleged contacts consist principally of the fortuity

-16-

that Mitsui is headquartered in New York and that the Policy is governed by New York law.  There is no suggestion that Bulldog requested Houchens or ISR to procure insurance from a New York-based company.  The resulting New York connection hardly constitutes "purposeful activity" as required under § 302(a)(1).

By contrast, the Western District of Kentucky indisputably has personal jurisdiction over defendants, where a dispute between them (and Mitsui) is pending.  Accordingly, the Court addresses defendants' motions to transfer venue first.

## II.  Defendants' Motions to Transfer Venue

Where the transferee district is a proper venue, as is indisputably the case here,[5] "motions for transfer lie within the broad discretion of the district court and are determined upon 'notions of convenience and fairness on a case-by-case basis.'" Schoenefeld v. New York, 2009 WL 1069159, at *2 (S.D.N.Y. Apr. 16, 2009) (quoting In re Cuyahoga Equip. Corp., 980 F.2d 110, 117 (2d Cir. 1992).  Deciding whether to transfer is an exercise of discretion requiring the balancing of various factors, including: (i) the convenience of the witnesses; (ii) the convenience of the parties; (iii) the relative means of the parties; (iv) the locus

---

[5]    Mitsui acknowledges that this action could have been brought in the Western District of Kentucky.  ECF No. 14 at 3.

of the operative events; (v) the relative ease of access to sources of proof; (vi) the weight accorded to plaintiff's choice of forum; (vii) the availability of process to compel unwilling witnesses; (viii) the forum's familiarity with the governing law; and (ix) trial efficiency and the interests of justice based upon the totality of the circumstances.  Id.; see also New York Marine and Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 112 (2d Cir. 2010).

The above factors do not comprise an exhaustive list, nor are they to be applied in a mechanical or formulaic manner.  Rather, the factors "serve as guideposts to the Court's informed exercise of discretion."  Albert Fadem Trust v. Duke Energy Corp., 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002).

### a. Convenience of the Witnesses

The convenience of party and non-party witnesses is often the "most important consideration in a Section 1404(a) motion." Schoenefeld, 2009 WL 1069159, at *2 (citations omitted).  When evaluating this factor, the Court considers "the materiality, nature, and quality of each witness, not merely the number of

witnesses in each district." Royal & Sunalliance v. Brit. Airways,
167 F. Supp. 2d 573, 577 (S.D.N.Y. 2001) (citation omitted).

LG&E and Bulldog have identified at least twelve potential
witnesses who would be substantially inconvenienced if this action
were to remain in Mitsui's chosen forum: Bram Williams, Owner of
Bulldog; Ryan Hey, Bulldog Diving Supervisor; Joseph Pepper,
Bulldog Tender/Standby Diver; Michael Bloch, Bulldog
Tender/Standby Diver; Becky Tillis, Bulldog Safety Manager; Joseph
Hayes, LG&E employee who signed the GCA; Wayne Gill, LG&E employee
at Mill Creek; Jim Nichols, LG&E employee at Mill Creek; David
French, LG&E employee at Mill Creek; Robert Janzen, LG&E employee
at Mill Creek; Chris McVey, LG&E employee at Mill Creek; LaTonya
Griffith, LG&E employee at Mill Creek; and certain representatives
of KOSHA.  Blask Decl. ¶¶ 15-27.  These individuals, all of whom
are employed or reside in Kentucky or Indiana, were involved in
negotiating and executing the GCA and Purchase Order and possess
knowledge of those agreements, as well as information bearing on
causation and liability related to the 2021 accident.  That
information is relevant to the central issues in this litigation:

-19-

whether Bulldog assumed LG&E's tort liability and, in turn, whether the GCA constitutes an "insured contract" under the Policy.

Mitsui does not seriously contest that the witnesses identified by defendants would be seriously inconvenienced if litigation proceeded in this District.  Instead, Mitsui asserts that such witnesses did not have "anything to do with the formation of the Policy" and could not "provide admissible parole evidence as to the meaning of the policy."  Mitsui LG&E Opp. at 20.  That position rests on Mitsui's threshold premise that the relevant inquiry is "not the meaning and effect of the GCA's indemnity language as between LG&E and Bulldog but, rather, whether the words of the GCA render it an 'insured contract' as defined in the Policy[.]"  Id.  Consequently, Mitsui identifies no relevant individuals and instead gestures vaguely to potential witnesses from "Mitsui's former underwriter, who is located in New York/New Jersey" and ISR, located in Massachusetts.  Id.  Mitsui's effort to suggest that the Court need only construe the Policy and not the GCA fails as the preceding quote makes clear.  It would be inappropriate for this Court to resolve the "insured contract" issue in the absence of, and potentially in conflict with,

-20-

determinations on those liability issues currently before the court in the Western District of Kentucky.

In short, defendants have identified witnesses who are integral to the issues presented to this litigation, who reside or work in Kentucky or Indiana, and who, as Mitsui implicitly concedes, would be significantly inconvenienced by having to testify in New York. Accordingly, this factor heavily favors transfer to the Western District of Kentucky.

### b. Convenience and Relative Means of the Parties

Where the inconvenience to the moving party could be "completely eliminated without substantially adding to the non-moving party's inconvenience," this factor tends to weigh in favor of transfer. Frame v. Whole Foods Mkt., Inc., 2007 WL 2815613, at *6 (S.D.N.Y. Sep. 24, 2007). Central to the evaluation of the factor weighing the convenience and relative means of the parties is the fact that Mitsui is already a named defendant in the W.D. Ky. Action, has appeared (without a jurisdictional challenge) and filed an answer, and has made a motion in that litigation. Moreover, Mitsui is a national insurance provider and subsidiary of an international insurer with "sister companies" across the globe that serve more than 40 countries and regions. Who We Are, MSIG Holdings (U.S.A.) Inc., https://www.msigusa.com/about/ (last

accessed Feb. 11, 2026).   Although headquartered in New York, Mitsui is licensed to issue insurance in all 50 states, as well as the District of Columbia and Puerto Rico, and maintains 10 nationwide offices.  Id.

By contrast, defendants would be significantly inconvenienced by proceeding in New York.  LG&E is a Kentucky corporation, and Bulldog's principal office is located in Rockport, Indiana, less than 100 miles from Louisville.  AC ¶¶ 2-3.  Both LG&E and Bulldog would be inconvenienced by having to litigate in New York, a forum in which neither conducts business.  Further, most of the relevant evidence, including witnesses with knowledge of the operative contracts and the 2021 accident, is in Kentucky or Indiana.  Though LG&E does not argue that it would be financially unable to litigate in New York, LG&E Mem. at 19, such costs would likely be onerous for Bulldog, a small diving company employing 16 divers.  Williams Decl. ¶ 3.  The convenience and relative means factors therefore weigh in favor of transfer.

### c. Locus of Operative Events

The location of a lawsuit's operative events is a "primary factor" in assessing a transfer motion.  Schoenefeld, 2009 WL 1069159, at *3.  To determine the relevant locus, the Court must "look to the site of the events from which the claim arises."

-22-

AVEMCO Ins. Co. v. GSV Holding Corp., 1997 WL 566149, at *6 (S.D.N.Y. Sep. 11, 1997) (citation and internal quotation marks omitted).  The factual epicenter of the dispute lies in or near Kentucky, where the GCA was negotiated and executed, where Bulldog and LG&E engaged in a course of performance, and where the events leading up to and following the 2021 accident occurred.

Mitsui's contentions to the contrary are unavailing.  Mitsui argues that because the Policy was negotiated, underwritten, bound, and executed in New York, this District constitutes the appropriate locus.[6]  Mitsui Bulldog Opp. at 17; Mitsui LG&E Opp. at 21-22.  However, the language of the Policy, and in particular the definition of an "insured contract," is not in dispute. Mitsui treads carefully to avoid explicitly stating that the central issue is the meaning and effect of the GCA's indemnity language but nevertheless concedes that the pertinent issue is "whether the words of the GCA render it an 'insured contract' as defined in the Policy[.]"  Mitsui LG&E Opp. at 20.  The "words of the GCA" do not exist in a vacuum, and determining their significance requires an interpretation of what, if any, indemnity obligations Bulldog

---

[6]    Mitsui does not contend that there were any in-person negotiations that occurred in New York related to the Policy.

assumed under the GCA.  Accordingly, this favor weighs in favor of transfer.

### d. Relative Ease of Access to Sources of Proof

Given the modern realities of electronic discovery and the ease with which documents can be downloaded and transferred, the location of documentary evidence is considered a neutral factor in the transfer analysis.  Am. S.S. Owners Mut. Prot. & Indemn. Ass'n v. Lafarge N. Am., Inc., 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007). The Court declines to depart from that approach.  However, to the extent that there are relevant documents relating to whether the GCA qualifies as an "insured contract," they are likely in or near the Western District of Kentucky.

### e. Plaintiff's Choice of Forum

A plaintiff's choice of forum traditionally merits "substantial consideration" in the transfer balancing test.  See, e.g., In re Warrick, 70 F.3d 736, 741 (2d Cir. 1995).  That choice warrants less deference "where the connection between the case and the chosen forum is minimal."  Chiste v. Hotels.com L.P., 756 F. Supp. 2d 382, 401 (S.D.N.Y. 2010).  As a New York-based insurance company, Mitsui presumably chose to file in this District for convenience purposes.  That choice is understandable, and the Court does not discount the consideration of home forum convenience.

-24-

However, the weight of Mitsui's choice is diminished by the fact that the operative facts, i.e., the GCA's underlying indemnity obligations, bear little connection to New York. Accordingly, this factor does not shift the balance of factors in favor of this District, particularly given the pending W.D. Ky. Action.

### f. Availability of Process to Compel Unwilling Witnesses

The availability of compulsory process to secure the attendance of unwilling witnesses, while of secondary importance, is closely related to the witness convenience factor. The parties do not identify witnesses whose attendance may require compulsory process. However, because potentially key witnesses reside in or near Kentucky, any need to compel the testimony of uncooperative witnesses would likely arise in the context of a trial conducted in New York.

### g. Comparative Familiarity of Each District with the Governing Law

A venue's familiarity with governing state law is "generally given little weight in federal courts," which are capable of applying the substantive law of other states. AEC One Stop Grp., Inc. v. CD Listening Bar, Inc., 326 F. Supp. 2d 525, 531 (S.D.N.Y. 2004). While this dispute may well necessitate the interpretation

-25-

of Kentucky law, given federal courts' ability to apply the substantive law of other states, this factor is neutral.

### h. Judicial Economy and the Interests of Justice

In evaluating a transfer motion, courts may consider trial efficiency and general "interests of justice." Montgomery v. Tap Enters., Inc., 2007 WL 576128, at *5 (S.D.N.Y. Feb. 26, 2007). The "benefits of consolidating related cases in a common forum are often substantial" and can include facilitating efficient discovery while avoiding unnecessarily duplicative or inconsistent results. Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Am. Boat Co., LLC, 2012 WL 1382278, *at 3 (S.D.N.Y. Apr. 20, 2012). Here, the underlying indemnity dispute is being litigated in the Western District of Kentucky. Moreover, Mitsui's attempt to claim the benefits of the "first-filed" rule falls flat. The first-filed rule "does not supersede the inquiry into the balance of convenience required under § 1404(a)[.]" River Rd. Int'l, L.P. v. Josephthal Lyon & Ross Inc., 871 F. Supp. 210, 214 (S.D.N.Y. 1995). Placing these parallel litigations in the same venue would promote efficiency while minimizing the risk of preventable inefficiencies. Specifically, we note that the Western District of Kentucky's Local Rule 40.1(b), which addresses related cases, would allow for coordinated case management and the conservation

of judicial resources.  Accordingly, to the extent the first-filed rule applies at all, it falls well short of overcoming the balance of convenience favoring transfer.

### CONCLUSION

For the foregoing reasons, defendants' motions to transfer venue pursuant to 28 U.S.C. § 1404(a) are granted.  The motions to dismiss for lack of personal jurisdiction are denied without prejudice.  The Clerk of Court is respectfully directed to terminate the motions pending at ECF Nos. 24 and 27 and promptly transfer this action to the United States District Court for the Western District of Kentucky.


**SO ORDERED.**


Dated:    February 13, 2026
          New York, New York


_____
    NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE